**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARLES VARNEDOE,

               Petitioner,

v.                            Case No.:    3:12-cv-982-J-32JRK
                                                      3:08-cr-407-J-32JRK-1

UNITED STATES OF AMERICA,

               Respondent.

_____/

## ORDER

     This case is before the Court on Petitioner Charles Varnedoe's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 1).[1]  The government filed a Response in Opposition.  (Doc. 9).  The motion was timely filed.  Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.

## I.    Procedural History

     On November 19, 2008, a grand jury sitting in the Middle District of Florida indicted Petitioner on one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Crim. Doc. 1).  Petitioner was convicted of this charge on

_____

[1] Citations to Petitioner's criminal case file, United States of America v. Charles Varnedoe, 3:08-cr-407-J-32JRK-1, are denoted as "Crim. Doc. ____."  Citations to Petitioner's civil § 2255 case file, 3:12-cv-982-J-32JRK, are denoted as "Doc. ____."

November 6, 2009 following a jury trial. (Crim. Doc. 184). The Court sentenced Petitioner to 188 months' imprisonment, followed by five years of supervised release, and ordered the forfeiture of $131,930.00 in assets. (Crim. Doc. 213). Petitioner appealed his sentence to the Eleventh Circuit Court of Appeals, challenging only the Court's decision to deny him a minor-role reduction under § 3B1.2 of the United States Sentencing Guidelines. United States v. Varnedoe, 428 F. App'x 917, 917-18 (11th Cir. 2011). Because "the undisputed facts suggest[ed] Varnedoe was a trusted and important member of… [a] drug conspiracy[,]" the Court of Appeals affirmed Petitioner's sentence and the Court's decision to deny Petitioner a minor-role reduction. Id. at 919.

## II.    Background

Petitioner raises four claims of ineffective assistance of counsel in his Motion to Vacate: (Ground One) that his attorneys failed to advise him of his right to testify at a pretrial suppression hearing; (Ground Two) that his attorneys failed to investigate or call witnesses, including one Lorenzo Michael Davis, to contradict the government's version of events regarding a disputed search and seizure; (Ground Three) that counsel failed to investigate or subpoena one Anthony Robinson to testify at trial on Petitioner's behalf; and (Ground Four) that counsel failed to advise or prevented Petitioner from testifying in his behalf at trial, contrary to Petitioner's wishes. (Doc. 1 at 4-9).

Before trial, Petitioner unsuccessfully moved to suppress incriminating evidence that he argued was obtained from two illegal searches and seizures.

Petitioner's first motion to suppress sought to exclude evidence derived from a federal agent's seizure of his cell phone on April 30, 2008. (Crim. Doc. 65). Petitioner alleged that the agent took the phone from him without obtaining either consent or a search warrant. Id. at 2-3. The agent who retrieved the phone, Bruce Savell, stated in a report that Petitioner offered it to him during a meeting at Petitioner's home. Petitioner disputed Agent Savell's account. Id.

Petitioner's second motion to suppress sought to exclude any evidence discovered when, on November 20, 2008, federal agents searched his residence and a motorcycle trailer immediately following his arrest, pursuant to an arrest warrant. (Crim. Doc. 66). During the search, agents discovered $131,930.00 in a floor safe, a Florida Star newspaper article reporting on a drug-bust, a digital scale, a cell phone, and empty tape and plastic wrap packages. Id. at 3. The government's Report of Investigation stated that Petitioner consented to the agents' search, but Petitioner disputed this account as well. Id.

Petitioner also states in his Motion to Vacate that when officers arrested him, he was seized in his front yard and then removed into his house because the officers had safety concerns due to a gathering crowd of onlookers. (Doc. 1 at 14). Petitioner contends that there were no safety concerns, and that this was merely a pretext for the officers to gain access to Petitioner's home.[2]

---

[2] The agents also conducted a protective sweep of Petitioner's home shortly after his arrest to ensure no other persons were present. However, the officers did not discover any evidence during this sweep. (Crim.Doc. 124 at 19 n. 15).

3

United States Magistrate Judge James Klindt conducted a hearing on Petitioner's motions to suppress on April 15, 2009.  Special Agent Savell was the government's lone witness regarding the suppression issues, and Petitioner presented no witnesses of his own.  Following the hearing, Judge Klindt issued a Report and Recommendation that recommended denying Petitioner's motions to suppress.  (Crim. Doc. 124 at 21).  The Magistrate Judge concluded that Petitioner had consented to the agents' seizure of his cell phone on April 30, 2008, as well as to the November 20, 2008 search of his residence and motorcycle trailer.  Id.  Although Petitioner did not testify, the Magistrate Judge acknowledged his allegations that agents seized his phone and searched his property without consent.  Id. at 9, 13, 19, 20.  Still, the Magistrate Judge credited Agent Savell's testimony and, applying the factors for evaluating whether a defendant's consent to search is voluntary under United States v. Chemaly, 741 F.2d 1346 (11th Cir. 1984), reh'g granted, 741 F.2d 1346 (11th Cir. 1984) (en banc), sua sponte reinstated without reh'g, 764 F.2d 747 (11th Cir. 1985)[3], determined that Petitioner voluntarily consented to the agents taking his cell phone and to searching his residence and motorcycle trailer.  (Crim. Doc. 124 at 14-20).  Specifically, the Magistrate Judge found that Petitioner believed no incriminating evidence would be found when he consented to either search, id. at

---

[3] "Relevant factors, none of which is dispositive, include voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of defendant's cooperation with the police, the defendant's awareness of his right to refuse to consent to search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found."  Chemaly, 741 F.2d at 1352.

16, 20; that Petitioner was neither in custody nor threatened with custody when he consented to agents taking his cell phone, id. at 15; that Petitioner was of at least average intelligence, id.; that agents did not use coercive tactics to obtain Petitioner's consent to search his residence, with Petitioner even cooperating in the investigation, id. at 19-20; that while agents had drawn their guns when arresting Petitioner in his yard, the agents had holstered their guns by the time Petitioner consented to the search of his home, id. at 8; and that Petitioner consented to the search of his residence despite knowing that he could have demanded a search warrant. Id. at 20. The Court adopted the Report and Recommendation after considering objections, thereby denying Petitioner's motions to suppress.  (Crim. Doc. 148).

At his trial, three witnesses testified that Petitioner was a member of a multi-million dollar conspiracy to move cocaine from locations throughout the southern United States to Jacksonville, Florida.  (Doc. 9-7 at 50-106, 156-72, 193-206).  The government published a recorded phone conversation between Petitioner and a suspected co-conspirator, Christopher Robinson, wherein Petitioner discussed driving to pick up "a nickel something."  (Doc. 9-7 at 87-89).  Robinson confirmed that "a nickel" meant five kilograms of cocaine.  (Id.).  Agent Savell testified that when Petitioner was arrested, he had a large sum of money wrapped in plastic packages, rubber bands, and fabric softener sheets stuffed in his home's floor safe.  (Doc. 9-8 at 162-63).  Agent Savell further testified that narcotics dealers often use fabric softener sheets to mask the odor of drugs.  (Id. at 163).  Data on Petitioner's cell phone also linked him to other drug dealers and suspected drug dealers.  (Doc. 9-8 at 146-47).

5

After the close of arguments, the jury deliberated for slightly over two hours before returning a verdict of guilty.  (See Doc. 9-9 at 60, 65-66).

## III.    Discussion

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that, as a result, he suffered prejudice sufficient to undermine confidence in the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984).   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  The petitioner bears the burden of proof on both the "performance" prong and the "prejudice" prong, and he must prove both to prevail. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

### A. Ground One:  Whether counsel rendered ineffective assistance by not advising Petitioner of his right to testify at the suppression hearing

Petitioner contends that counsel gave ineffective assistance by depriving him of the right to testify at the suppression hearing.  (Doc. 1 at 4, 14).  The specific nature of Petitioner's ineffective assistance claim is inconsistent, however.  At one point, Petitioner asserts that he "repeatedly requested that he be allowed to testify in defense of his motions" but that "defense counsel refused to allow the Defendant to rebut the testimony of Agent Savell and other government witnesses on the issue of whether or not there was a consent to search."  (Id. at 14).  At another point, Petitioner asserts:

> Trial counsel ineffectively advised the Defendant not to testify on his own behalf at the Defendant's Motion to Suppress hearing…. [T]rial counsel had improperly stated to the Defendant that the court would not give credibility to the Defendant's statements that he did not voluntarily surrender his cellular telephone to Agent Bruce Savell.

Thus, Petitioner wavers between contending that counsel refused several requests by him to testify at the hearing (id. at 14) and contending that counsel merely gave him bad advice in recommending that he not testify (id. at 4).

Either way, Petitioner believes the Court would have granted his motions to suppress had he taken the stand.  Petitioner alleges that had he testified at the hearing, he would have denied consenting to any of the searches, that the Court would have credited Petitioner's testimony over Agent Savell's, that the Court would have found consent lacking, and that the Court would have suppressed the evidence.  Specifically, Petitioner states that had he taken the stand, he would have testified that Agent Savell snatched his cell phone from him without permission on April 30, 2008; that agents used intimidation tactics to take the phone; that agents did not have consent to enter his house; that the agents had their guns drawn and Petitioner was put in fear of their actions; that he did not think he could object to the agents' search; that he felt he had no choice but to open a floor safe for the officers; and that the money agents discovered in the floor safe of Petitioner's house was from motorcycle racing or sales, not drug dealing.  (Id. at 4, 14).

To be sure, defendants have a constitutional right to testify in their own behalf, which derives from the Fifth, Sixth, and Fourteenth Amendments.  Rock v. Arkansas, 483 U.S. 44, 51-53 (1987).  That right is personal and fundamental; it

cannot be waived by either the court or trial counsel, but only by the defendant. United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992). Indeed, the defendant is the one "who above all others may be in a position to meet the prosecution's case." Ferguson v. Georgia, 365 U.S. 570, 582 (1961).

The Eleventh Circuit has not explicitly held that a defendant's right to testify extends to a hearing on a motion to suppress. Lewis v. United States, 491 F. App'x 84, 86 n. 1 (11th Cir. 2011). Assuming that it does, however, a petitioner's claim that his attorneys prevented him from testifying is analyzed as a claim of ineffective assistance of counsel. Teague, 953 F.2d at 1534. Counsel gives ineffective assistance with respect to the defendant's right to testify where he or she "has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone." Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). Yet, even if the petitioner shows that counsel was deficient in preventing him from testifying, he must still establish that he suffered prejudice as a result. See Teague, 953 F.2d at 1534 (quoting the prejudice prong of Strickland, 466 U.S. at 687).

Petitioner's claim fails because he has not shown that his counsel performed unreasonably, either by refusing specific requests to testify or by misadvising him with regard to the wisdom of testifying. For one, Petitioner's very contention that counsel simply gave poor advice, see id. at 4, is inconsistent with the contention that counsel refused numerous requests to testify, see id. at 14, for a claim of bad advice

implies acquiescence to that advice by the petitioner. Indeed, the record of the suppression hearing undermines Petitioner's claim that he wanted to testify but that counsel would not allow it. Before the Court began to hear testimony at the suppression hearing, counsel contemplated that Petitioner might testify:

> MR. FALCON:  Your Honor, just one other preliminary matter, if we may.
>
> THE COURT:  Yes.
>
> MR. FALCON:  As far as the decision as of yet has not been made whether Mr. Varnedoe will testify in this suppression hearing.
>
> If he were to, Judge, he would be limited to the fact that the two – the two motions to suppress, whether consent was given for Agent Savell to take his phone and whether consent was given for them to search the house, that would be the limited scope of the testimony that my client would be – would be taking to the stand.
>
> I feel that that would limit the government as far as to exceed the scope of anything else beyond what was at direct examination. And I wanted to – to get a ruling from the Court as to the ability of the government to go beyond the scope of direct examination of Mr. Varnedoe.

Crim. Doc. 133 at 28-29. Both the Court and the government agreed that the government would not cross-examine Petitioner beyond the scope of direct examination. Id. at 29. However, the Court also stated that the government could cross-examine Petitioner about matters related to his credibility, independent of the scope of direct examination. Id. at 29-30. During the presentation of testimony, counsel cross-examined the government's witnesses about whether Petitioner

voluntarily consented to officers seizing his phone or searching his house, about the number of officers present, and about whether the officers had their firearms drawn when they obtained Petitioner's consent.   <u>Id.</u> at 210-27.  After the government presented its last witness, the Court inquired whether the defense would put on any witnesses of its own.  <u>Id.</u> at 239.  Trial counsel announced that the defense would not put on witnesses, stating his belief "that the Court has gone through all the elements necessary, so I don't – I do not believe at this time that it's necessary that we will put my client on the stand."  <u>Id.</u>  Thereafter, the Court twice stated that it would consider the suppression hearing closed.  <u>Id.</u> at 244, 246.  At no point did Petitioner express a desire to testify, indicate dissatisfaction with not testifying, or object to defense counsel's decision not to summon Petitioner before closing the hearing.  (<u>See</u> Crim. Doc. 133 at 239-49).  Thus, the record shows that counsel contemplated having Petitioner testify and that Petitioner did not object to the tactical decision not to call him.  Taken together, this record refutes Petitioner's claim that he wanted to testify and counsel simply refused to allow him the opportunity.

To the extent Petitioner claims that counsel poorly advised him about not testifying, his Motion to Vacate still does not support relief.  Petitioner complains that in advising him not to testify at the suppression hearing, trial counsel "improperly" informed him that the Court would not give credibility to Petitioner's claim that he did not voluntarily hand his cell phone to Agent Savell.[4]  (Doc. 1 at 4).

---

[4] Petitioner does not explain how trial counsel "improperly stated" that the Court would not find Petitioner's testimony credible, considering that this Court has never

This implies that (1) counsel <u>did</u> consider having Petitioner testify, (2) counsel consciously decided it would be unwise, and (3) that counsel consulted Petitioner about the reason for that decision.  Again, the record suggests that Petitioner agreed with that decision, as he never expressed a desire to testify.  <u>See</u> Crim. Doc. 133 at 239-49.  While the decision to testify is the defendant's alone, an attorney does not render ineffective assistance by strategically advising a defendant not to take the stand.  <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001).  That appears to be what happened here.  According to Petitioner's own motion, counsel advised against him testifying because counsel determined that his testimony would not be credible – an inherently strategic consideration.  Therefore, insofar as Petitioner claims that counsel simply gave poor advice in recommending that he not take the stand, counsel's decision appears to have been a strategic decision about whether to call witnesses.  As such, counsel's decision is due deference.  <u>Evans v. Sec'y, Fla. Dep't of Corr.</u>, 699 F.3d 1249, 1268 (11th Cir.2012) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'") (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir.1995) (<u>en</u> <u>banc</u> )).  Petitioner's § 2255 motion thus fails to support a finding of deficient performance with respect to counsel's advice.

Petitioner may think in retrospect that his attorney made a bad strategic decision by not calling him, but courts are not allowed to engage in such second-

---

opined that it would have found Petitioner's testimony to be credible if he had testified.

guessing-in-hindsight.  <u>Strickland</u>, 466 U.S. at 689.  Weighing the risks against the benefits, a reasonable attorney could have concluded that it would be unwise to expose his client to the unpredictable hazards of cross-examination.  To protect the defendant from giving testimony that could later be used for impeachment, it is common for experienced trial counsel not to place their client on the stand at a suppression hearing.  Such a decision is all the more reasonable where the only potential benefit of the defendant's testimony is bringing out information or allegations already available to the Court.

Petitioner has also failed to demonstrate prejudice because the testimony he would have given is cumulative of what was already before the Court.  For that reason, there is not a substantial probability that the Court would have suppressed the evidence even if he had testified.  Compared with the evidence and allegations before the Court on Petitioner's motions to suppress, Petitioner's hypothetical testimony would have been redundant.  The Court was aware of substantially everything Petitioner would have testified to, yet still credited Agent Savell's testimony that Petitioner consented to the searches in question.  Throughout the Report and Recommendation, the Magistrate Judge acknowledged Petitioner's allegations that agents retrieved his cell phone without consent, entered his home and searched it without permission, and "commanded" Petitioner to open the floor safe for the agents.  (Crim. Doc. 124 at 9, 13, 19, 20).  Agent Savell himself testified that it was Petitioner's recollection that he "grabbed" Petitioner's cell phone away from him without permission on April 30, 2008.  (Crim. Doc. 133 at 187).  Defense

counsel's cross-examination of Agent Savell followed up on Petitioner's statement that Savell had "grabbed [the phone] out of [Petitioner's] hand." Id. at 215. Counsel attempted to impeach Savell on his testimony that Petitioner would voluntarily hand his phone over, consent to the agents searching his home and motorcycle trailer, or voluntarily open the floor safe. See id. at 210-11, 222, 227. The Court still found Petitioner had consented based on the Chemaly factors. Thus, Petitioner's testimony that he did not consent to either search and seizure would have shed little new light. While the Court understands that there is potential inherent value in having the Court hear Petitioner's side of the story from Petitioner himself, allowing the Court to compare Petitioner's credibility with that of Agent Savell's, in the context presented here Petitioner suffered no Sixth Amendment prejudice.

**B. Ground Two: Whether counsel rendered ineffective assistance by failing to investigate or call other witnesses for the suppression hearing**

Petitioner argues that counsel rendered ineffective assistance by failing to call neighbors who witnessed law enforcement officers arresting him in his front yard on November 20, 2008. In particular, Petitioner argues that counsel should have called one neighbor, Lorenzo Michael Davis.[5] Petitioner claims that Davis would have testified that Petitioner did not consent to the search of his residence. (Doc. 1 at 5). Petitioner also claims that Davis – or any of the other witnesses to the arrest – would have testified that no safety concerns required the officers to remove themselves from

---

[5] Lorenzo Michael Davis may also go by the name of Michael Davis Lorenzo, Jr. Davis has gone by several aliases according to a record search conducted by Agent Savell.

13

Petitioner's front yard and into his house.  (Id. at 5, 15).  Petitioner believes this testimony would have discredited Agent Savell's testimony, though he provides no affidavits from Davis or any of the other purported witnesses.

To show that counsel was ineffective in the decision to not call a witness, the burden of demonstrating prejudice is heavy because "often allegations of what a witness would have testified to are largely speculative."  Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (citing United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980) (just the petitioner's word on what testimony the missing witnesses would have provided was insufficient to meet the petitioner's burden).  With no more than the Petitioner's allegations, it is only speculation what Davis or any of the other witnesses to the arrest would have testified to at the suppression hearing.

"[W]hen an attorney 'substantially impeache[s]' [a] witness, no claim for ineffectiveness can succeed unless the petitioner comes forward with 'specific information' which 'would have added to the impeachment of the State's witnesses.'"  Johnson v. Alabama, 256 F.3d 1156, 1186 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985)).  "Without that kind of information, a petitioner cannot meet his burden of proving a Strickland violation."  Johnson, 256 F.3d at 1186.  In Johnson, a prisoner accused his trial attorney of providing ineffective assistance by failing to subpoena individuals who might have discredited the testimony of a prosecution witness, even though Johnson's attorney had extensively cross-examined that same witness.  Id.  Johnson claimed there were several witnesses who would have stated that he did not make the damaging

14

admissions that the government's witness testified he made.  Id. at 1185.  Johnson, however, provided no evidence (other than unsworn statements) that the missing witnesses would have testified as he alleged they would.  Id. at 1186-87.  The Court of Appeals denied Johnson's ineffective assistance claim, explaining: "Johnson offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'"  Id. at 1187 (quoting Aldrich, 777 F.2d at 636).

Here, as in Johnson, Petitioner's attorney thoroughly cross-examined the government's witness.  Counsel's cross-examination of Agent Savell covered 20 transcript pages and included more than 100 questions, during which counsel sought to cast doubt on the agent's testimony that Petitioner would freely hand his phone over to federal agents, consent to law enforcement searching his home and motorcycle trailer, or voluntarily assist the agents in searching his safe.  (See Crim. Doc. 133 at 209-29).  Counsel's cross-examination also disclosed that twelve officers were present, with guns drawn, when they arrested Petitioner in his front yard.  Id. at 216-17.  Counsel was therefore not deficient in impeaching the government's witness, even in the absence of Davis.

Additionally, what Davis or any other missing witness would have testified to is speculative.  Petitioner provided no affidavits or evidence of any sort supporting his claim that the missing witnesses would have testified favorably for Petitioner.  The Court cannot grant post-conviction relief based on the speculative testimony of missing witnesses.  See Johnson, 256 F.3d at 1187.  Accordingly, Petitioner has not

shown that counsel's decision to not call Davis or other witnesses affected the resolution of his motion to suppress.

### C. Ground Three:  Whether counsel rendered ineffective assistance by failing to summon Anthony Robinson to testify at Petitioner's trial

Petitioner claimed that his attorney rendered ineffective assistance by not calling Anthony Robinson to testify on Petitioner's behalf at trial.  (Doc. 1 at 7, 15). Anthony Robinson is the nephew of one of Petitioner's co-conspirators, Christopher Robinson.  (Id. at 7).  Petitioner theorizes that Christopher falsely implicated him in the drug conspiracy to obtain leniency from the government, and that Christopher's nephew would have confirmed Petitioner's theory by testifying that his uncle lied to the government in implicating Petitioner.

Petitioner's speculation about what Anthony Robinson would have testified to is unreasonable.  According to Petitioner himself, Christopher was cooperating with the government in its case against Petitioner to receive leniency.  If Anthony had testified that his uncle, Christopher, was falsely implicating Petitioner, it would have destroyed any chance for Anthony's uncle to obtain leniency.  Such testimony might also have required Anthony to give self-incriminating testimony suggesting his own knowledge or involvement in the drug conspiracy.[6]  It is unlikely that Anthony would

---

[6] The government investigated Anthony Robinson as a member of the drug conspiracy, but never charged him.  (Doc. 9 at 18).  In order for Anthony to testify that his uncle was falsely implicating Petitioner, Anthony would have to implicitly admit sufficient knowledge of the conspiracy to know who was not involved in it, thereby potentially incriminating himself, while also testifying against the government, which had not yet charged him.  A reasonable trial lawyer might have supposed that were Anthony summoned, he would only testify favorably for the government and his uncle, not Petitioner.

have effectively testified against his own uncle, or potentially incriminated himself, in order to aid Petitioner.   On the other hand, had Anthony taken the stand, it is much more likely that he would have aligned with his uncle and the government and testified that Petitioner was a participant in the drug conspiracy.   As such, it was almost certainly a wise decision by trial counsel to not call a witness whom the government had not summoned but who was likely only to harm Petitioner's case. Petitioner has not shown that counsel's decision not to call Anthony Robinson fell outside the "wide range of professionally competent assistance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 795 (1987)).

Nor can Petitioner establish prejudice.   His claim with regard to Anthony Robinson suffers the same infirmity as his claim regarding the other missing witnesses: with no evidence or affidavit from Anthony confirming that he would have testified as Petitioner claims he would, the Court is left to speculate whether the testimony would have been helpful.   However, such speculation is "insufficient to carry the burden of a habeas corpus petitioner." Aldrich, 777 F.2d at 636.

### D. Ground Four: Whether counsel rendered ineffective assistance by not allowing Petitioner to testify at trial

Finally, Petitioner claims that counsel rendered ineffective assistance by "preventing or advising the Defendant not to testify at trial..."   (Doc. 1 at 8). Petitioner claims that had he testified at trial, he would have: (1) provided an alibi showing that he could not have participated in road trips to acquire cocaine; (2) corrected the government's "misinterpretation" of an incriminating recorded phone

call between Petitioner and Christopher Robinson; and (3) explained that the large sum of money found in the floor safe of his home was from selling or racing motorcycles, under-the-table mechanic work, or other activities unrelated to drug dealing.  (Doc. 1 at 8, 16).

As previously noted, a defendant has a fundamental and personal right to testify in his behalf.  Rock, 483 U.S. at 51-53; Teague, 953 F.2d at 1532.  Allegations that a petitioner's attorney refused him the right to testify are evaluated under the Strickland standard.  Teague, 953 F.2d at 1534.  A lawyer's performance falls outside the range of competence demanded of attorneys in criminal cases if either (a) "defense counsel refused to accept the defendant's decision to testify and would not call him to the stand;" or (b) "defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant[.]"  Id. at 1534.  However, even if an attorney performed deficiently in not allowing a petitioner to testify, the petitioner is not entitled to relief unless he also demonstrates prejudice.  See id.

Again, the record undermines Petitioner's claim that counsel either failed to advise him of the right to testify or prevented Petitioner from testifying.  During the course of the trial, the Court notified counsel that, under Eleventh Circuit precedent, it would not make any inquiry of whether Petitioner wished to testify.  (Doc. 9-7 at 252-53).  Rather, the Court stated that the decision of whether to put the defendant on the stand was between attorney and client.  (See id. at 253).  Counsel responded: "We have discussed it, Your Honor.  So we're ready to proceed on that when it comes to."  (Id.).  When the government later rested its case, Petitioner's counsel announced

that the defense would not put on additional evidence and would rest as well.  (Doc. 9-9 at 22).  Defense counsel renewed a motion for judgment of acquittal, the attorneys coordinated time-frames for closing arguments, and the Court announced to the jury that the evidence was closed.  (Id. at 22-24).  The government then proceeded to begin its closing argument.  At no point did Petitioner express dissent or dissatisfaction with not testifying.  Thus, the record undermines Petitioner's claim that his attorneys "coerced" him out of testifying, or failed to advise him of the right to testify.

Even if counsel had performed deficiently, however, the lack of Petitioner's testimony was not prejudicial.  Petitioner has failed to show a reasonable probability that the jury would have acquitted him had he testified.

Petitioner vaguely asserts that he would have provided an alibi defense.  (Doc. 1 at 8).  However, Petitioner gives no further details, such as what dates, times, locations, and activities comprised the defense.  The Court is therefore left to guess what Petitioner's alibi might have been.  Petitioner's counsel did attempt such a defense at trial, but to no avail.  Responding to the government's allegations that Petitioner made routine trips to Texas as a drug courier, counsel insisted in closing argument:

> He's on the road all the time making a living, making an honest living.  And for a year and a half, with his own bare hands, he took a dump of a truck and restored it.  It took him a year and a half.  He was there three or four times a week working on it.  It's hard to fit in a trip to Texas every week when you're doing that and racing bikes on the side, too.

(Doc. 9-5 at 11).  The jury convicted Petitioner anyway.  Petitioner makes no showing why the jury would have accepted his new alibi defense when it already rejected a previous one.  Petitioner's other contentions of prejudice are equally speculative.

Overall, the evidence against Petitioner was substantial.  (See Doc. 9-10 at 50). The substantiality of the evidence incriminating a petitioner may prevent a showing of prejudice.  See, e.g., Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (en banc) (citing Waters v. Zant, 979 F.2d 1473, 1490 (11th Cir. 1992)) ("We agree with the panel's holding that Waters' guilt stage ineffective assistance of counsel claims are due to be denied because the evidence of guilt was so overwhelming that Waters cannot show prejudice from any of the claimed shortcomings of his counsel at the guilt stage."); United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir. 1992) (failure to present witnesses corroborating an alibi defense did not prejudice defendant where evidence of guilt was overwhelming, the alibi would only have covered part of the period of the charged conspiracy, and the testimony would not have refuted defendant's involvement in the conspiracy).  Three witnesses testified that Petitioner was a participant in a multi-million dollar conspiracy to move cocaine from locations across the South to Jacksonville, Florida.  (Doc. 9-7 at 50-106, 156-72, 193-217).  A recorded phone conversation revealed Petitioner discussing transporting drugs.  (See id. at 87-89).  Petitioner had a large sum of money in his home's floor safe, along with rubber bands and fabric softener sheets, which Agent Savell testified were used by narcotics dealers to mask the odor of drugs.  (See Doc. 9-8 at 162-63).  Data on Petitioner's cell phone linked him to other drug dealers and suspected drug dealers.

(Id. at 146-47).  Trial counsel attempted to explain away the incriminating evidence in closing argument, but to no avail.  It is not likely, therefore, that Petitioner's testimony would have overcome such substantial evidence and persuaded the jury to acquit him.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner Charles Varnedoe's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Charles Varnedoe, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has not absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  Miller-El v. Cockrell, 537

U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

     **DONE AND ORDERED** at Jacksonville, Florida this 5th day of May, 2015.


TIMOTHY J. CORRIGAN
United States District Judge


lc 19

Copies:
Counsel of record
Petitioner Charles Varnedoe